Casper T. FREDRICKSON

v.

The UNITED STATES.

No. 100–53.

United States Court of Claims.

Jan. 31, 1956.

By that time the entire judgment had been paid out except for approximately $22,000.

Samuel T. Ansell, Jr., Washington, D. C., Ansell & Ansell, Washington, D. C., on the briefs, for plaintiff.

Arthur E. Fay, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

JONES, Chief Judge.

Plaintiff seeks to recover the difference in pay between what he actually received and (1) the active duty pay of a captain with over 30 years' service ($860.25 per month) for the period April 1 to April 27, 1950, and (2) the retired pay of a captain with over 30 years' service from April 28, 1950, to the date of judgment (at $523.69 per month from April 28, 1950, to April 30, 1952, and at $544.64 per month from May 1, 1952, to the date of judgment).

As to the first period the issues are (1) whether plaintiff was on active duty after April 1, 1950, and (2) if so, how long and in what rank. As to the second period the issue is whether the fifth proviso of section 402(d) of the Career Compensation Act of 1949, 63 Stat. 802, 818, 37 U.S.C.A. § 272(d), as applied to reserve officers under section 402(i) of that act, 37 U.S.C.A. § 272(i), allows plaintiff to be retired with the pay of a captain even though he only held the rank of commander at the time of his retirement. Both parties have moved for summary judgment.

In 1949 plaintiff was a commander in the Naval Reserve on extended active duty. On October 10, 1949, while serving on such duty, he was admitted to the United States Naval Hospital, Oakland, California, as a patient with a diagnosis of arteriosclerotic heart disease. Subsequently he was discharged from the hospital. He was again admitted with the same diagnosis on January 17, 1950. On January 31, 1950, a clinical board at the hospital found that plaintiff was permanently unfit to perform the duties of his rank of commander and recommended that he appear before a physical evaluation board.

On March 10, 1950, the physical evaluation board made recommended findings that plaintiff was unfit to perform the duties of his rank by reason of arteriosclerotic heart disease and duodenal ulcer; that his disability was not due to intentional misconduct or willful neglect; that accepted medical principles indicated that his disability was permanent; and that his disability was 40 percent. The Secretary of the Navy approved the recommended findings of the physical evaluation board on March 31, 1950.

In the meantime, on March 10, 1950, a Navy Supply Corps Selection Board had recommended the plaintiff, among others, for temporary promotion to the grade of captain, Supply Corps, United States Naval Reserve. Plaintiff's eligibility for such promotion was based upon his years of service in the grade of commander. The President duly approved the report of the Selection Board, and March 29, 1950, pursuant to ALNAV 27–50, issued

March 24, 1950, plaintiff was ordered to appear before a board of medical examiners at Oakland Naval Hospital to determine his physical fitness to perform the duties of captain in the Supply Corps. On April 4, 1950, the plaintiff appeared before this board which found him unfit to perform his duties by reason of arteriosclerotic heart disease and multiple joint hypertrophic arthritis.

Plaintiff remained at the Oakland Naval Hospital until April 27, 1950. On that day he received a letter from the Chief of Naval Personnel ordering him to report to the Commanding Officer of the hospital in connection with procedures incident to his release from active duty. The letter stated that plaintiff had been put on the retired list as of April 1, 1950, and that he was to regard himself relieved of all active duty as of that date. On April 27, 1950, plaintiff also received retirement orders, dated April 18, 1950. These orders provided that plaintiff be retired by reason of physical disability, with a 40 percent rating. The effective date specified was April 1, 1950. Plaintiff was to receive retired pay under one of three stated methods, any one of which he might choose. Plaintiff had no notice of his retirement or of his relief from active duty prior to April 27, 1950.

Plaintiff was processed for separation on April 27, 1950, and found qualified for separation that same day. Also on the 27th he was ordered detached from the Naval Air Station, Alameda, California, his station at the time of his hospitalization. Plaintiff proceeded to his home the next day.

Plaintiff has received retired pay equal to 75 percent of the active duty pay of a commander with over 30 years' service under section 201 of the Career Compensation Act of 1949, 63 Stat. 805, 37 U.S.C.A. § 232, from April 28, 1950, to April 30, 1952, and retired pay equal to 75 percent of the active duty pay of a commander with over 30 years' service under section 201 of the Career Compensation Act of 1949, as amended by Public Law 346, 66 Stat. 79, 37 U.S.C.A. § 232.

■■ Plaintiff's first claim is for the active duty pay of a captain with over 30 years' service, from April 1 to April 27, 1950, inclusive, under section 201(e) of the Career Compensation Act of 1949, supra. That section reads, in part:

"(e) All members of the uniformed services when on the active list, when on active duty, or when participating in full-time training, training duty with pay or other full-time duty * * * shall be entitled to receive the basic pay of the pay grade to which assigned, or in which distributed, pursuant to subsection (b), (c), or (d) of this section, in accordance with cumulative years of service * * *."

The first question to be decided is whether plaintiff was on the "active list", on "active duty", or on "other full-time duty" from April 1 to April 27, 1950, inclusive. Defendant claims plaintiff was retired on April 1, 1950, and thereafter was an "inactive retired officer." Plaintiff claims that he was not released from active duty until April 27, 1950. We think that, while plaintiff may have been retired as of April 1, 1950, he was on active duty, or at least on the active list, through April 27, 1950. From all that appears his actual status did not change until that later date at which time he was "separated". Mere fiat cannot convert a status which in all particulars remained the same to something else. Plaintiff's status did not change until the 27th of April. As we pointed out in Crist v. United States, 124 Ct.Cl. 825, the Career Compensation Act of 1949, supra, allows active duty pay to an officer when actually on active duty even though he is retired.

The next question raised by the case is whether plaintiff's active duty during this period was with the rank of captain or the rank of commander. While it is clear that plaintiff was selected for promotion, there is nothing to indicate that he had actually been promoted to the grade of captain. Indeed, had he actually been promoted to the grade of cap-

tain the controversy on the second main issue would appear to be pointless. We find, therefore, that plaintiff served on active duty through April 27, 1950, with the rank of commander. Our attention has not been drawn to any law or authority that would justify him in receiving the active duty pay of a captain when he had not actually held this rank.

The second main issue to be determined is this: what rank should be the basis for computing plaintiff's retirement pay. The statute to be construed is section 402(d) of the Career Compensation Act of 1949, supra, from which we quote the following:

> "(d) * * * a member of the uniformed services who is retired pursuant to the provisions of this title, shall be entitled to receive disability retirement pay computed, at his election, by multiplying an amount equal to the monthly basic pay of the rank, grade, or rating held by him * * * at the time of his retirement * * * by * * * *Provided further,* That if the physical disability entitling such member to disability retirement pay is found to exist as a result of a physical examination given in connection with effecting a permanent promotion or a temporary promotion where eligibility for such temporary promotion was required to have been based upon cumulative years of service or years of service in rank, grade, or rating, the disability retirement pay of such member shall be based upon the basic pay of the rank, grade, or rating to which such member would have been promoted but for such disability, if such rank, grade, or rating is higher than any other rank, grade, or rating upon which such pay is herein authorized to be computed and which such member would have been entitled to receive if serving on active duty in such rank, grade, or rating. * * * *"

The parties agree that plaintiff qualifies under every term of the proviso except that the physical disability entitling plaintiff to disability retirement was found to exist as a result of a physical examination given in connection with a promotion. Plaintiff's disability was admittedly discovered prior to his promotion physical. The defendant contends that only if the latter examination first revealed the disability is the plaintiff entitled to the benefits of the proviso. Plaintiff, on the other hand, urges that he is clearly covered by the terms of the disputed clause. The facts of this case are similar to the facts in Leonard v. United States, 128 F.Supp. 957, 131 Ct. Cl. 91. In that case the plaintiff was ordered to a naval hospital for treatment on September 26, 1949. The Selection Board approved his selection for promotion on November 1, 1949, and on January 26, 1950, he was given a physical examination in connection with his promotion and found unfit. On December 21, 1949, the Chief of Naval Personnel had been advised by the naval hospital that plaintiff would probably be retired. Plaintiff was retired for physical disability on April 1, 1950.

If we compare the Leonard case with the instant case we find some factual differences but they are not sufficient to justify an opposite conclusion in this case. In the Leonard case the plaintiff was found unfit for promotion prior to retirement whereas here the contrary is true. But in the Leonard case plaintiff's retirement was contemplated prior to his physical examination for promotion. In both cases the plaintiffs had physical examinations in connection with their promotions; the physical disabilities entitling them to disability retirement were "found to exist" as a result of these examinations in both the cases; and in both cases the Government knew of the existence of the disabilities prior to the examinations. The latter fact did not prevent plaintiff from recovering in the Leonard case, and that fact should not preclude the present plaintiff from recovering in this case. We thought then and think now that the dates of the physical examinations for promotion and re-

tirement were so close together as to be part and parcel of the same transaction so that it might properly be said that plaintiff's disabilities were found to exist as a result of physical examinations given in connection with effecting their promotions.

Defendant's motion for summary judgment is denied and plaintiff's motion for summary judgment is granted. Entry of judgment is suspended to await the filing of a report by the General Accounting Office showing the amount due plaintiff in accordance with this opinion.

It is so ordered.

LARAMORE, MADDEN, WHITAKER, and LITTLETON, Judges, concur.