John Cordell **WILLIAMS**

v.

**UNITED STATES.**

No. 173–57.

United States Court of Claims.
April 8, 1959.

Guy Emery, Washington, D. C., for plaintiff. Emery & Wood, Washington, D. C., were on the briefs.

Arthur E. Fay, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

JONES, Chief Judge.

Plaintiff seeks to recover the difference between the disability retired pay of a lieutenant (junior grade) in the United States Navy which he has actually received since May 7, 1952, and that of a lieutenant to which he claims entitlement.[1]

While serving on active duty as a lieutenant (junior grade) in the United States Navy Reserve, plaintiff was in August 1951 admitted to a Naval hospital with diagnosis undetermined (Tuberculoma—Right Lower Lobe in Apex). Later that month he was transferred to another Naval hospital with diagnosis unchanged. On October 12, 1951, the diagnosis was changed to "Tuberculoma, Right Lower Lobe, #Xxy—Established."

In November of that year he appeared before a board of medical survey at the hospital, and the board recommended that he be retained as a patient for further treatment. The diagnosis was unchanged at that time.

On January 22, 1952, while plaintiff was still in the hospital as a patient, a Navy selection board convened pursuant to the authority granted by the Act of July 24, 1941, 55 Stat. 603, 604, as amended 65 Stat. 108, 109. The following day the Chief of the Bureau of Medicine and Surgery of the Navy Department requested of the commanding officer of the hospital a "dispatch report prognosis and probable duration of hospitalization Case LTJG John Cordell Williams * * * for use selection board now in session." The commanding officer of the hospital, on January 24, 1952, advised the Chief of the Bureau of Medicine and Surgery that plaintiff's prognosis was excellent and that the probable duration of hospitalization was two months.

A few days later, on March 1, 1952, plaintiff's diagnosis was changed to "Tuberculosis, n.e.c., Enucleation, Tuberculoma, Superior Segment of Right Lower Lobe." Then, on March 21, 1952, a clinical board at the hospital met to "consider the disposition to be effected" in the plaintiff's case. The clinical board found that it was improbable that plaintiff would be able to return to duty and render useful service and recommended that he appear before a physical evaluation board.

On or before that same date, i. e., March 21, 1952, the selection board recommended plaintiff for temporary promotion to lieutenant. Three days later, the recommendation of the clinical board, which had been made on March 21, 1952, was approved by the clinical board's convening authority. On March 26, 1952, the report of the selection board, recommending plaintiff among others for promotion, was submitted to the Acting Secretary of the Navy and approved by him. The next day, plaintiff appeared before

---

1. Plaintiff also received disability retired pay of a lieutenant (junior grade) from May 1, 1952, to May 6, 1952, the period from the effective date of his retirement for physical incapacity to the date on which he actually received notice of his retirement. In his petition, plaintiff claimed active-duty pay and allowances of a lieutenant for that period. The General Accounting Office, in Claim No. Z–1492096, has allowed the active-duty pay and allowances of a lieutenant (junior grade) for this period. Apparently plaintiff has now abandoned his claim for the difference between that administrative settlement and the amount of active-duty pay and allowances of a lieutenant. If such claim has not been abandoned, it has already been decided adversely to plaintiff. Fredrickson v. United States, 1956, 138 F.Supp. 265, 133 Ct.Cl. 890.

the Physical Evaluation Board which recommended that he "be found unfit to perform the duties of his rank by reason of physical disability * * *." On March 31, 1952, there was published in Navy Department Bulletin (BuPers CL 56–52) a promotion list containing the name of plaintiff for promotion to lieutenant with date of rank of April 1, 1952. On April 8, 1952, the Secretary of the Navy approved the recommended findings of the Physical Evaluation Board, i. e., finding that plaintiff was unfit to perform the duties of his rank.

The Chief of Naval Personnel, on April 24, 1952, addressed orders to plaintiff relieving him of all active duty. Those orders stated that his temporary disability retirement was approved by the Secretary of the Navy effective May 1, 1952. The orders were actually delivered to plaintiff on May 6, 1952. On that date he also received orders effecting his transfer as of May 1, 1952, to the Temporary Disability Retired List in the rank of lieutenant (junior grade), and he thereafter received the disability retired pay of that rank with the exception of the brief period noted above.[2]

Plaintiff's claim for disability retired pay of a lieutenant is based primarily on section 402(d) of the Career Compensation Act of 1949, 63 Stat. 802, 818.[3] Section 402(d) reads as follows:

"A member of the uniformed services whose name is placed upon the temporary disability retired list of his service * * * shall be entitled to receive disability retirement pay computed, at his election, by multiplying an amount equal to the monthly basic pay of the rank, grade, or rating held by him at the time of the placement of his name on the temporary disability retired list * * * by (1) * * *, or (2) * * *: *Provided further*, That if the physical disability entitling such member to disability retirement pay is found to exist as a result of a physical examination given in connection with effecting a permanent promotion or a temporary promotion where eligibility for such temporary promotion was required to have been based upon cumulative years of service or years of service in rank, grade, or rating, the disability retirement pay of such member shall be based upon the basic pay of the rank, grade, or rating to which such member would

---

2. Subsequently, plaintiff was transferred from the Temporary Disability Retired List to the Retired List in further proceedings pursuant to section 402(e) of the Career Compensation Act of 1949, 63 Stat. 802, 819, 37 U.S.C. § 272(e), now 10 U.S.C.A. § 1210.

3. Now 10 U.S.C.A. § 1401 et seq. Plaintiff also relies on section 312(i) of the Act of August 7, 1947, the Officer Personnel Act of 1947, 61 Stat. 795, 860, which provides as follows:

"Officers on a promotion list who, at any time prior to promotion, are found incapacitated for service by reason of physical disability contracted in line of duty shall, when retired, be retired in the rank for which they were selected, with retired pay at the rate of 75 per centum of the active-duty pay of the grade to which selected. For the purpose of this subsection, officers on a promotion list for temporary promotion to the next higher grade shall be considered to be on the promotion list for permanent promotion thereto."

The Government argues that this provision was repealed by section 531(a) of the Career Compensation Act of 1949, supra, which repealed all acts or parts of acts which were inconsistent with the provisions of the 1949 act. This argument was made in Leonard v. United States, 1955, 128 F.Supp. 957, 131 Ct.Cl. 91. The court there found it unnecessary to decide the issue, but found that the Career Compensation Act appeared to confirm the rights granted by section 312(i) of the 1947 act and that when the two provisions were placed alongside each other, it appeared doubtful that Congress intended by the Career Compensation Act to repeal the specific provisions of section 312(i). As in the Leonard case, it will be unnecessary in the instant case to decide this question, if plaintiff's claim falls within the terms of section 402(d) of the Career Compensation Act.

have been promoted but for such disability, * * *." [4]

The Government insists that this case is not covered by section 402(d), because (1) the physical disability entitling this plaintiff to disability retirement pay was not found to exist as a result of a physical examination "given in connection with effecting a * * * promotion * * *" and (2) the temporary promotion was not one "where eligibility * * * was required to have been based upon cumulative years of service or years of service in rank, grade, or rating, * * *."

The Government says that plaintiff herein was not ordered to take a physical examination which was designated as a "physical examination given in connection with effecting a * * * promotion." The question of labels is not important. The real question before this court is whether or not under all the facts and circumstances of this case, the physical examination which plaintiff actually received constituted a physical examination given in connection with effecting a promotion.

Plaintiff places reliance upon the Leonard and Fredrickson decisions, cited above, but neither of those cases presented the precise problem now before us. In those cases, there were actual physical examinations designated as physical examinations in connection with promotions. The issue in those cases was whether or not the physical disability entitling the person to disability retirement pay was "found to exist as a result" [128 F.Supp. 958] of those actual physical examinations for promotions.

However, those cases are helpful in showing how section 402(d) should be construed. For example, they indicate that there is no specific time at which the physical examination must be given. In Leonard the claimant was found unfit for promotion prior to retirement, and

in Fredrickson the plaintiff was found unfit for promotion after retirement.

Section 402(d) of the Career Compensation Act of 1949, *supra,* requires that the physical disability be found to exist as a result of a physical examination given in connection with effecting a promotion. It does not spell out any particular time for the examination, nor any particular person or board to conduct the examination. All that the statute requires, in this respect, is that the physical examination be given in connection with effecting a promotion.

■ Leonard and Fredrickson show that the time, before or after retirement, is not significant. The fact that the physical examination here was given before the promotion list was published, but after Williams had been considered for promotion, would not mean that the physical examination was not given in connection with a promotion.

■ In both Leonard and Fredrickson, the physical examination for promotion was conducted by a board of medical examiners, but the fact that the physical examination is given by another board, as it was here, would not mean that the examination was not given in connection with effecting a promotion, if the facts and circumstances show otherwise. In the instant case, the promotion list was made subject to certain qualifications and instructions contained therein, among which was a requirement of meeting certain physical standards. Men whose names were on that list who later, in physical examinations presumably given by boards of medical examiners, were found to be physically disabled, would, if otherwise qualified, get the benefits of section 402(d). The question is whether that section must be so narrowly construed as to include only men in that situation. We do not believe that it should be.

Here it was known, at the time that the selection board convened, that plain-

---

4. The benefits of this provision are available to members of reserve components, such as plaintiff, by reason of section

402(i) of the Career Compensation Act of 1949, supra, now 10 U.S.C.A. § 1215.

tiff was in the hospital with an undetermined diagnosis. The Navy was interested in plaintiff's physical condition in connection with effecting his promotion. The Chief of the Bureau of Medicine and Surgery requested a report from the commanding officer of the hospital and stated that the report was "for use selection board now in session." The report that was given was in fact erroneous. Had the commanding officer, on January 24, 1952, furnished a correct diagnosis which actually became available a few days later on March 1, it would seem reasonable to say that the physical disability was found to exist as a result of a physical examination given in connection with effecting a promotion.

We do not know why the selection board was not informed of the change of diagnosis made on March 1, 1952. The Government suggests that the situation would have been different had the selection board been correctly informed, but this seems to be immaterial. We do not understand how the Navy can make inquiries about a man's physical condition in connection with a promotion, and then because it receives inaccurate information, say that physical disability was not found to exist in a physical examination in connection with a promotion. The Navy instituted an inquiry about plaintiff's physical condition in connection with effecting a promotion. Merely because its left hand did not know what its right hand was doing, the Navy cannot now escape responsibility by claiming that the information, which could have been readily secured, was not available in connection with the very purpose for which it was requested.

██ Considering all the facts and circumstances of this case, as shown by the recital of the events in chronological order, we believe that the physical examination which plaintiff received was part and parcel of one continuous transaction and must be considered to be a physical examination given in connection with effecting his promotion.

A second issue in this case is whether eligibility for this temporary promotion was one where eligibility was required to have been based upon cumulative years of service or years of service in rank, grade, or rating.

The plaintiff alleged and defendant admitted that "Plaintiff's years of service in the grade of lieutenant (junior grade) was a requirement for his eligibility for promotion." The Government concedes that plaintiff was within the zone of eligibles for consideration for promotion, but says that section 402(d) of the Career Compensation Act of 1949, *supra*, requires more than that.

The Government urges that the benefits of section 402(d) are limited to promotions under the Officer Personnel Act of 1947, *supra*. We do not find any statutory language to that effect, and we are not willing to so restrict section 402(d).

The Government seems to argue that to come within the terms of section 402 (d) either (1) the eligibility must be required to be based *solely* on length of service or (2) that eligibility must be required *by statute* to be based on length of service.

The Act of July 24, 1941, *supra*, § 5,[5] under which the selection board acted, provides that temporary appointments shall be made "in such numbers as the President may determine that the needs of the service require and in such manner and under such regulations as he may prescribe." The regulations issued pursuant thereto repeat this language about the needs of the service. The needs of the service would be a material consideration for promotions under any statute. Not every man who becomes eligible under the Officer Personnel Act of 1947, *supra*, is promoted, and the number promoted must in some way be related to the needs of the service.

The 1947 act contains section 307(a) (3), 61 Stat. 843,[6] which provides that lieutenants (junior grade) who have completed two years' service in that grade "shall be eligible for consideration by a selection board for temporary promotion

---

5. Now 10 U.S.C.A. § 5597.

6. Now 10 U.S.C.A. § 5751(b).

* * *." The Navy Department directive establishing the selection board in the instant case, "ALNAV 104, 51–732. 'Convening of Selection Boards' BuPers. 16 October 1951", in pertinent part reads as follows:

> "Eligible line officers include those lieutenants and lieutenants, junior grade, of the Navy and Naval Reserve who have reported prior to 1 July 1951 for active military service in excess of 30 days whose dates of rank in grade are prior to 2 January 1946 for lieutenants and prior to 1 July 1949 for lieutenants, junior grade; * * *"

In this case the selection board considered for promotion to lieutenant only those lieutenants (junior grade) who had held that rank at least for a period of over two years.

The Government's position is that because of the requirement of meeting the needs of the service, the promotions effected under the 1941 act might not always be based upon length of service, since the statute itself does not prescribe certain years of service for promotion. Promotions under the 1941 act may not always be based upon length of service, but the eligibility for promotion here was required by the Navy directive to be based on length of service. Section 402(d) does not say that the eligibility for promotion must be required *by statute* to have been based on years of service or years of service in rank, and we hold that plaintiff's eligibility for temporary promotion was required to have been based on years of service in rank within the meaning of that section.

The Government's motion for summary judgment will be denied, and plaintiff's similar motion will be granted. Judgment will be entered to that effect with the amount of recovery to be determined pursuant to Rule 38(c), 28 U.S.C.A.

It is so ordered.

MARIS, Circuit Judge (Retired), sitting by designation, and LARAMORE, MADDEN and WHITAKER, Judges, concur.