Jones, Chief Judge,
delivered the opinion of the court; Plaintiff was commissioned as a lieutenant in the Nurse Corps of the Naval Eeserve of the United States, effective *602 December 16,1952, and served in the Navy on active duty in that grade from January 9, 1953, to April 30, 1958. Plaintiff brings this suit to recover the difference between the retired pay she has received as a lieutenant and the retired pay she would have received as a lieutenant commander.
On October 18, 1957, plaintiff’s uterus and ovaries were removed by surgery. On December 3, 1957, plaintiff was selected for promotion to lieutenant commander by a Navy Selection Board. On December 4, 1957, plaintiff’s left kidney was removed by further surgery. The Selection Board’s report was approved by the President on December 24, 1957, and plaintiff’s selection to lieutenant commander was announced in ALNAV-56 of December 26, 1957. On February 6,1958, a Naval Medical Board recommended that the plaintiff appear before a Physical Evaluation Board. On February 27, 1958, a Physical Evaluation Board found plaintiff unfit for continuing active duty. On March 19, 1958, plaintiff was examined by a Navy Board of Medical Examiners for promotion and was found not physically qualified.
On March 28, 1958, the plaintiff requested of the Chief of Naval Personnel that she be placed on the retired list in the grade of lieutenant commander. The findings recommended by the Physical Evaluation Board were approved on April 8, 1958, by the Secretary of the Navy. By letter of April 11, 1958, the Chief of Naval Personnel replied to plaintiff’s request that she receive the retirement pay of a lieutenant commander as follows:
Reviewing the events leading to your retirement would not indicate that promotion and retirement proceedings could be considered as continuous or congruous. Rather, it would seem that your disability was “found to exist” or “discovered” and determined to be disqualifying well in advance of your promotion physical examination. There appears to be no valid reason for granting action for relief in this instance.
On May 1, 1958, plaintiff was placed on the temporary disability retired list in the grade of lieutenant with over 4 years’ service. Plaintiff asserts she is entitled to the retired pay of a lieutenant commander. Defendant argues that the plaintiff’s physical condition was known to it prior to the *603 physical examination for promotion. Therefore the defendant reasons that it knew of the plaintiff’s physical defects as of the time plaintiff underwent surgery in 1957 and that the plaintiff’s disability was not “found to exist” as a result of the physical examination for promotion given on March 19, 1958. The phrase “found to exist” was set forth in § 402(d) of the Career Compensation Act of 1949, 63 Stat. 802, 818, 37 U.S.C. (Supp. IV, 1946) § 272(d). Section 402(d) reads, insofar as here pertinent, as follows:
(d) * * * a member of the uniformed services who is retired pursuant to the provisions of this title, shall be entitled to receive disability retirement pay computed, at his election, by multiplying an amount equal to the monthly basic pay of the rank, grade, or rating held by bim * * * at the time of his retirement * * *: Provided further, That if the physical disability entitling such member to disability retirement pay is found to exist as a result of a physical examination given in connection with effecting a permanent promotion or a temporary promotion where eligibility for such temporary promotion was required to have been based upon cumulative years of service or years of service in rank, grade, or rating, the disability retirement pay of such member shall be based upon the basic pay of the rank, grade, or rating to which such member would have been promoted but for such disability, if such rank, grade, or rating * * * upon which such pay is herein authorized to be computed and which such member would have been entitled to receive if serving on active duty in such rank, grade, or rating: * * *.
The fifth proviso of § 402(d) has been codified at 10 U.S.C. (1958) § 1372(3) in pertinent part as follows:
* * * any member of an armed force * * * whose name is placed on the temporary disability retired list * * *, is entitled to * * *
(3) The permanent regular or reserve grade to which he would have been promoted had it not been for the physical disability for which he is retired and which was found to exist as a result of his physical examination for promotion.
The argument that the defendant advances here that the plaintiff’s disability must be first “found to exist” in connection with her physical examination for promotion has *604 been urged by the defendant in similar circumstances. Leonard v. United States, 131 Ct. Cl. 91 (1955) ; Fredrickson v. United States, 133 Ct. Cl. 890 (1956); and Williams v. United States, 145 Ct. Cl. 513 (1959). In all three cases, the defendant had prior knowledge of physical disability on the part of the plaintiff. In each case physical disability was held by this court as “found to exist” in connection with the physical examination for promotion.
The defendant protests that the Department of the Navy which selected the plaintiff for promotion did not know that the plaintiff had undergone major surgery; otherwise it would not have selected plaintiff for promotion. As a matter of fact, we think it clear that at the time the plaintiff underwent major surgery the medical authorities manifestly did not consider the plaintiff’s condition to be seriously disabling. It appears to us somewhat in defiance of logic to argue, on the one hand, that for purposes of § 1372(3) the defendant knew of plaintiff’s physical disabilities prior to examination for promotion and then, on the other hand, to argue that had the defendant in fact known of them it would not have listed the plaintiff for promotion. We used language in Williams v. United States, supra, at p. 6, which is apposite here:
The Navy instituted an inquiry about plaintiff’s physical condition in connection with effecting a promotion. Merely because its left hand did not know what its right hand was doing, the Navy cannot now escape responsibility.
In the instant case, serious operations were performed by naval doctors upon the plaintiff on October 18, 1957, and December 4, 1957. On December 3, 1957, plaintiff had been selected for promotion to lieutenant commander by a Navy Selection Board. Furthermore, on February 27, 1958, the Physical Evaluation Board made recommendations to the effect that plaintiff was unfit for active duty. On March 19, 1958, plaintiff was given a physical examination for promotion. We dealt with an almost identical situation in Fredrickson v. United States, sufra. There the plaintiff urged his disability was “found to exist” in connection with a physical examination for promotion. The defendant
*605 argued that the disability was found to exist at an earlier examination by a Physical Evaluation Board and that therefore plaintiff’s disability was not “found to exist” within the meaning of the statute. In Fredrickson, this court, relying on Leonard v. United States, supra, dismissed the defendant’s argument on this point in the following manner at p. 895:
In the Leonard case the plaintiff was found unfit for promotion prior to retirement whereas here the contrary is true. But in the Leonard case plaintiff’s retirement was contemplated prior to his physical examination for promotion. In both cases the plaintiffs had physical examinations in connection with their promotions; the physical disabilities entitling them to disability retirement were “found to exist” as a result of these examinations in both the cases; amd in both cases the Government hnew of the existence of the disabilities prior to the examinations. The latter fact did not prevent plaintiff from recovering in the Leonard case, and that fact should not preclude the present plaintiff from recovering in this case. [Emphasis supplied.]
We have no doubt that the plaintiff comes squarely within the rule set forth in Leonard and elaborated upon in Fred-rickson. Here, as in Fredrickson, we think that the “dates of the physical examinations for promotion and retirement were so close together as to be part and parcel of the same transaction * *
As we have seen, defendant makes its first attack on plaintiff’s case by an assertion that the disability for which plaintiff was found ineligible for promotion was known prior to the examination for promotion. As its second attack on plaintiff’s case, the defendant argues, apparently in the alternative, that the disability found by the retirement board was not the same as that found by the promotion board. Defendant insists that the codification of § 402(d) of the Career Compensation Act of 1949 in 10 U.S.C. §1812(3) demands that the findings of the promotion board and the findings of the retirement board must be the same if the plaintiff is to come within § 1372 (3).
The defendant asserts that § 1372(3), as codified, makes the series of cases beginning with Leonard inapplicable to *606 plaintiff’s situation here, since those cases involved construction of § 402(d). After reciting the proposition that codified § 1372(3) was not intended to work a change in the existing substantive law, the defendant declares that § 1372(3) requires that the defects which served to place the plaintiff on the temporary disability retired list must be the same as those which disqualified her for promotion.
We think it noteworthy to illustrate exactly the manner in which the Government’s construction of § 1372(3) changes the result which would have obtained under § 402(d) of the Career Compensation Act. In Fredrickson, the plaintiff had been found by a clinical military hospital board to be permanently unfit and it was recommended that he appear before a Physical Evaluation Board. The Physical Evaluation Board recommended that plaintiff was unfit to perform his rank by reason of arteriosclerotic heart disease and duodenal ulcer. The Board of Medical Examiners which examined plaintiff to determine his physical fitness in connection with a promotion found him ineligible by reason of arteriosclerotic heart disease and multiple joint hypertrophic arthritis. In Fredrickson, this discrepancy between the findings of the two boards was not raised since § 402(d) as worded did not raise this problem and plaintiff in Fredrickson was considered within the ambit of § 402(d). Now we are told that as § 1372(3) is worded, the plaintiff here whose situation is identical with that of the plaintiff in Fredrickson is, taking a literal view of defendant’s interpretation of § 1372(3), not within the coverage of the statute.
In this case, the Physical Evaluation Board and the Board of Medical Examiners produced findings that were not identical. The findings of the Physical Evaluation Board which examined plaintiff for eligibility for retirement were:
Uterus and both ovaries, removal of, complete, for 6
months after removal_100%
Obturator nerve, paralysis, moderate_ 0%
Kidney, removal of one; other normal_ 30%
Ulcer, duodenal, as rated under 7306, moderate_ 20%
The pertinent findings of the Board of Medical Examiners which examined plaintiff to consider her physical qualifications for promotion were:
*607 Left flank tenderness and hyperesthesia over opera-
tive scar- (CD)®
Absence acquired left kidney- (NOD)*®
Hyperesthesia over medial aspect left thigh- (CD)
Evidence of obturator nerve neuritis left- (CD)
Absence acquired, ovaries, uterus- (NOD)
*CD — Considered Disqualifying
**NCD — Not Considered Disqualifying
It will be observed from a comparison of the lists that the Board of Medical Examiners did not consider the absence of the ovaries and uterus as disqualifying for promotion. The Physical Evaluation Board, on the other hand, viewed the removal of these organs as resulting in a 100 percent disability in connection with retirement. Similarly, the result of the removal of a kidney was considered by the Physical Evaluation Board to result in a 30 percent disability. Both boards, however, viewed the evidence of obturator nerve neuritis as, in some measure, disqualifying. Moreover, there is another measure of similarity between the findings of the boards. The left flank tenderness and hyperesthesia over the operative scar were considered disqualifying by the Board of Medical Examiners. Although these defects were not mentioned by the Physical Evaluation Board, we believe that these latter defects were manifestly connected with surgery performed on the plaintiff by the Navy in 1957. The Board of Medical Examiners considered these latter defects to be disqualifying. The Physical Evaluation Board, on the other hand, indicated that the surgery itself — the removal of the organs — resulted in disability. We think this supplies a sufficient nexus between the recommendations of the two boards for us to reach a conclusion that their findings are consistent with each other.
We find that, even conceding arguendo defendant’s position that §1372(3) requires that the physical disability reported by the retirement board be the same as that which is found to exist as a result of a physical examination for promotion, there is a sufficiently substantial identity between the reports of the two boards to meet this requirement. Nevertheless, we wish to make it clear that we do not at this time decide that §1372(3) must be given the construction that the defendant seeks. We suggest that perhaps the reason *608 for any disparity that exists between the reports of the Physical Evaluation Board and the Board of Medical Examiners is that a board examining an officer for retirement works from an entirely different viewpoint than does a board considering the physical qualifications of an officer for promotion.
The defendant’s view that §1372(3) demands the same finding of disqualification by both the retirement board and the promotion board would severely restrict the class of officers who can claim the benefit of codified § 1372(3). As we pointed out in our comparison of this case with Fredrick-son, the result of defendant’s view would be to reach a result which would never have obtained under § 402(d) of the Career Compensation Act. Whether such a change, so restrictive of the retirement benefits of military personnel, can be achieved by a codification is open to considerable doubt. Because, however, the plaintiff here meets even the defendant’s rigorous interpretation of § 1372(3), we defer the resolution of this question as unnecessary to the decision of this case.
On the basis of our previous decisions in Leonard, Fred-rickson, and Williams, we think that the plaintiff’s disability was “found to exist” within the meaning of § 1372(3) at the time of the physical examination for promotion. Defendant’s motion for summary judgment is denied and plaintiff’s motion for summary judgment is granted.
Plaintiff is entitled to recover the difference between the retired pay she actually received as a lieutenant and the retired pay she should have received as a lieutenant commander, and judgment will be entered to that effect. The amount plaintiff is entitled to receive will be determined pursuant to Rule 38(c).
It is so ordered.
DuRKee, Judge; Laeamoke, Judge; and MaddeN, Judge, concur.
Whitakee, Judge, took no part in the consideration and decision of this case.
*609 In accordance with, the opinion of the court and on a memorandum report of the commissioner as to the amount due thereunder, it was ordered on February 10, 1961, that judgment for plaintiff be entered for $1,344.70.